JACK PULCHIN, as Administrator of the Estate of RUTH PULCHIN, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31409.)

Court of Claims, November 17, 1955.

*Aaron Honig* and *Leonard M. Lake* for claimant.

*Jacob K. Javits, Attorney-General* (*Robert Schwartz* of counsel), for defendant.

SYLVESTER, J. The claim, as pleaded, is for wrongful death and for pain and suffering. No evidence having been adduced to establish the cause of action for pain and suffering, it was dismissed at the end of claimant's case.

The decedent, twenty-six years of age, was an inmate of Creedmoor State Hospital on March 12, 1952, when she was attacked by a fellow patient, one Mary Concilla, who bit the decedent on the left arm above the wrist. The decedent died on March 15, 1952, three days later. Concilla was known to have assaultive tendencies, having established for herself a record of some twenty or more transactions of violence while at the institution. Of these, nine were reported for the year 1947, and the remainder for the years 1951 and 1952. No assaults are reported as occurring during the years 1948, 1949 and 1950.

Claimant, pointing to Concilla's history of assaults, as well as to the fact that Ward 9, where decedent and Concilla were housed, was a ward for disturbed patients contends that the State was negligent in the care, custody, treatment and restraint of its patients; that it failed to employ adequate restraints upon the patient Concilla; that knowing of her dangerous propensities, she was left free to repeat her attacks; that the hospital was insufficiently staffed, making it more convenient to Concilla to commit her assaults without hindrance. It is also charged that the medical treatment of the deceased was improper; more specifically, that the institution's physicians failed to properly diagnose and treat the condition resulting from the injuries suffered by the decedent. Much of the testimony concerned itself with the cause of death since claimant attributes the death to Concilla's bite upon the forearm of decedent. It is maintained that as a result of the negligence of the State's physicians to treat her wound properly the decedent developed what is diagnosed as " Sepsis " which is claimed to have caused her death. To be entitled to a recovery, it is incumbent upon claimant to establish the State's negligence in the care, maintenance and control of the institution as a proximate cause of the injury to the decedent. Briefly, having in mind the evidence adduced, it is claimant's burden to establish (1) that the ward was insufficiently attended in violation of reasonable standards of care in such matters so that the assault was thereby facilitated and (2) that the alleged " Sepsis " resulting from the assault was the cause of death.

There is, however, an absence of evidence sufficient to sustain a finding that the State's physicians were negligent in the medical treatment of the deceased. The hospital physician, Dr. Herland, treated her wound and traced its normal progress toward recovery. There is other medical testimony which regarded the wound as superficial, expressing the opinion that the wound was running its natural course toward resolution and that the patient's fatality could not have been due to the bite wound. On the other hand, the certificate of death, signed by the medical examiner, gives the cause of death as " Sepsis due to human bite of forearm by a patient in a mental hospital. Schizophrenia — Catatonic State ". The cause of death controversy was debated by the experts. Claimant's expert held to " Sepsis " as the cause of death. The State's expert disputed this opinion holding that " with all the facts and findings before us, this now remains only a highly theoretical possibility, with no established proof to support it." He discusses in great detail

his reasons why the entire picture here is not that of " Sepsis ". His conclusion, though he finds himself unable to express an exact etiological cause of death with certainty, suggests some antigenic drug hypersensitivity reaction such as seen in what is referred to as the Moschcowitz syndrome. He is corroborated by other expert testimony proffered by the State, and it is of moment also that Dr. Herland who attended the patient speaks of a normal healing of the wound. Diametrically opposed is the view of claimant's pathological expert whose minute analysis of the clinical record and microscopic slides leads him to the opinion that as a result of the wound inflicted by the bite on the forearm, bacteria was introduced into the deceased which affected her heart. He then ascribes " Sepsis " as the cause of death. Upon a consideration of all the evidence it is found that the claimant has not established that the death of Ruth Pulchin, the decedent herein, was caused by the wound inflicted upon her by the assailant Concilla. For this reason alone the claim must be dismissed. That part of the case which deals with alleged improper supervision, more particularly the matter of understaffing, must be disposed of in the light of the evidence that Wards 9 and 10 were operated together in three shifts. During the morning shift, between the hours of 8:00 A.M. and 3:00 P.M. there were eight attendants and a supervising nurse on duty there. From 3:00 P.M. or thereabouts to midnight three attendants and a supervising nurse who spent a great deal of time in the ward were on duty. From midnight until morning, three nurses were on duty, one in Ward 9, another in Ward 10 and a third who made herself available to both wards. Following the practice at the institution, it is also established that the attendant, Margaret Burns, looked into the dormitories every half hour during the night. This she did at 9:30 P.M. on the night of the attack, the supervising nurse having made the rounds at 9:00 P.M. It may not be said that the patient Concilla was left unattended or unguarded. Nor, on the evidence here, may it be held that on the night of the occurrence the ward was insufficiently attended, bearing in mind that the patients had been put to bed and that an attendant looked in at the dormitories every half hour during the night. Nevertheless, claimant's psychiatrist was of the opinion that, because of her alleged assaultive disposition, Concilla should have been isolated*— the State's psychiatrist maintained that it was not conducive

---

* Concilla had been in camisole restraint that night but had somehow worked herself out of the camisole and made her attack on the decedent.

to good therapy nor in accord with approved psychiatric practice to confine her to isolation.

It is thus found that the State was not guilty of negligence in the supervision, care and maintenance of its institution which was the proximate cause of decedent's death. Claimant has also failed to establish that '' Sepsis '', which is alleged to have resulted from the wound inflicted by Concilla, was the cause of death of the decedent.

In these circumstances the State is entitled to judgment dismissing the claim.

The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)